**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PEDRO AGUILERA-MONTERO,
                        *Petitioner,*

v.

MICHAEL B. MUKASEY,
                        *Respondent.*

No. 06-72956

Agency No.
A29-677-298

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 8, 2008—Seattle, Washington

Filed December 1, 2008

Before: Susan P. Graber and Johnnie B. Rawlinson,
Circuit Judges, and Otis D. Wright II* District Judge.

Opinion by Judge Rawlinson

*The Honorable Otis D. Wright II, United States District Judge for the
Central District of California, sitting by designation.

15869

**COUNSEL**

Russell W. Pritchett, Pritchett & Jacobson, Bellingham, Washington, for petitioner-appellant Pedro Aguilera-Montero.

M. Jocelyn Lopez Wright and Kristin K. Edison (argued), Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for respondent-appellee Michael Mukasey.

**OPINION**

RAWLINSON, Circuit Judge:

Appellant Pedro Aguilera-Montero (Aguilera-Montero) petitions for review of the Board of Immigration Appeals' (BIA) dismissal of his appeal of a denial of his application for adjustment of status. Aguilera-Montero asserts that he is entitled to a waiver of deportability pursuant to 8 U.S.C. § 1227 because of a full and unconditional state pardon.

Additionally, Aguilera-Montero maintains that the availability of a pardon-based waiver pursuant to 8 U.S.C. § 1227 violates the equal protection rights of inadmissible aliens, who are not entitled to such a waiver under 8 U.S.C. § 1182.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) and we deny the petition for review.

## I. BACKGROUND

Aguilera-Montero has a long history of illegal presence in this country. His original illegal entry was in September, 1986. On August 17, 1991, he was granted voluntary departure, but failed to depart. On June 19, 1992, he was apprehended and became the subject of deportation proceedings. On August 25, 1992, an immigration judge (IJ) granted him voluntary departure, and he again failed to depart. On February 20, 1993, he was deported, and he re-entered illegally on March 1, 1993. On October 13, 1993, deportation proceedings were commenced against Aguilera-Montero. On January 26, 1994, he was granted voluntary departure and failed to depart yet again. He was "encountered by the U.S. Border Patrol on January 3, 1995, while working illegally." Although he was deported on January 11, 1995, Aguilera-Montero re-entered the country illegally "on or about April 15, 1995."

On February 4, 1993, Aguilera-Montero pled guilty to unlawful possession of cocaine. On April 30, 2001, he filed an application for adjustment of status to permanent resident due to his marriage to a United States citizen. Aguilera-Montero's application was denied by the District Director, Citizenship and Immigration Services, Department of Homeland Security, for two reasons: 1) Aguilera-Montero was inadmissible for status as a permanent resident due to his second removal within a ten-year period; and 2) Aguilera-Montero was inadmissible for status as a permanent resident due to his conviction for violating a law relating to a controlled substance, i.e., his 1993 guilty plea to unlawful possession of cocaine.[1]

The denial included a Notice to Appear before an IJ for removal proceedings. Aguilera-Montero was charged with being subject to removal pursuant to 8 U.S.C. § 1182(a)(9)(A)(ii) (providing for removal of an inadmissible alien who has been ordered removed more than once and who seeks admission within twenty years of the last removal), and pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) (providing for removal of an inadmissible alien who has been convicted of a crime relating to a controlled substance).

Prior to his removal hearing, the Governor of the State of Washington granted Aguilera-Montero a "Full and Unconditional Pardon." At the removal hearing, Aguilera-Montero conceded removability. During the continued removal proceedings, Aguilera-Montero requested a waiver of the controlled substance inadmissibility charge, which would permit him to adjust his status to that of a lawful permanent resident. The IJ rejected Aguilera-Montero's request for a waiver, reasoning that although a waiver is available for aliens who have

---

[1]Aguilera-Montero also filed an Application for Permission to Reapply for Admission Into the United States After Deportation or Removal. That application was also denied on the basis of Aguilera-Montero's drug conviction. It does not appear that Aguilera-Montero appealed that decision.

been admitted into this country, no comparable waiver is available for aliens who have not been admitted into the country.

The BIA affirmed the IJ's ruling, reiterating that 8 U.S.C. § 1227(a)(2)(A)(v) "expressly provides that certain enumerated criminal grounds of *deportability* become inapplicable where the alien receives a full and unconditional executive pardon . . . but section 212 of the Act [8 U.S.C. § 1182] contains no equivalent waiver provision pertaining to the criminal grounds of *inadmissibility*." (second emphasis in the original).

Aguilera-Montero filed a timely petition for review of the BIA decision.

## II.   STANDARDS OF REVIEW

"[W]hen the BIA conducts a de novo review and issues its own decision, we review the BIA's decision rather than the IJ's." *Urzua Covarrubias v. Gonzales*, 487 F.3d 742, 747 n.2 (9th Cir. 2007) (citation omitted).

"We review constitutional and legal issues de novo." *Avila-Sanchez v. Mukasey*, 509 F.3d 1037, 1040 (9th Cir. 2007) (citations omitted).

## III.   DISCUSSION

### A.   Aguilera-Montero's State Pardon As Removing The Legal Consequences of His Controlled Substance Conviction

Relying on *Ex parte Garland*, 71 U.S. 333 (1866), and its progeny,[2] Aguilera-Montero asserts that a state pardon, like a

---

[2]In *Ex parte Garland*, the Supreme Court articulated that "[a] pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." 71 U.S. at 380.

Presidential pardon, obviates the legal consequences of his conviction.

**[1]** Pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II)(2006), "any alien convicted of, or who admits having committed, . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . , is inadmissible."

**[2]** In contrast, 8 U.S.C. § 1227, applicable to deportable aliens, explicitly provides a waiver of deportability to aliens who committed crimes of moral turpitude, had multiple criminal convictions, committed an aggravated felony, or engaged in high speed flight from an immigration checkpoint "if the alien subsequent to the criminal conviction has been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States." 8 U.S.C. § 1227(a)(2)(A)(vi)(2006).

Contrary to Aguilera-Montero's argument that a state pardon removes all legal consequences of a conviction, Aguilera-Montero's state pardon does not entitle him to a waiver that is not listed in 8 U.S.C. § 1182(a)(2)(A)(i)(II). In *Yuen v. I.N.S.*, 406 F.2d 499, 500 (9th Cir. 1969), we addressed the effect of a state pardon on statutory waivers of deportation. The petitioner, who was convicted of a state narcotics offense, asserted that his full and unconditional pardon entitled him to relief pursuant to section 249 of the Immigration and Nationality Act, which allows a record of lawful admission to be made under certain circumstances. *Id.* at 499. The petitioner "allege[d] that the Board . . . attached a disability to him on the basis of the conviction even though the conviction should be considered as wiped out by the act of the Governor in pardoning petitioner for the offense." *Id.* at 501 (internal quotation marks omitted). We rejected the petitioner's argument based on *Ex parte Garland*:

> We do not regard this as a sufficient ground for invalidating the federal statute which commands

such a result. It is true that, in *Ex parte Garland*, upon which petitioner heavily relies for his authority on the effect of a pardon, there is broad language to the effect that Congress cannot fix punishment beyond the reach of executive clemency, or consequences which attach to a conviction beyond the reach of executive clemency. But the Court was there speaking of federal executive clemency, not state.

Moreover, *Garland* and like cases deal with the effect of a pardon in releasing an offender from punishment. Accepting as true the premise that a pardon, full and unconditional, federal or state, exempts the convicted person from punishment, it does not thereby exempt such person from deportation. . . . It is well settled that deportation, while it may be burdensome and severe for the alien, is not punishment.

*Yuen*, 406 F.2d at 501-02 (citations and internal quotation marks omitted). Our reasoning, therefore, undermines Aguilera-Montero's argument premised on *Ex parte Garland*.[3]

**[3]** We have not extensively addressed the dichotomy between inadmissible and deportable aliens in the context of a state pardon. However, the Eleventh Circuit explicitly explored this issue at length in *Balogun v. United States Attorney General*, 425 F.3d 1356, 1358 (11th Cir. 2005), where the petitioner asserted that his "full and unconditional" state pardon entitled him to waiver of inadmissibility pursuant

---

[3]Aguilera-Montero contends that *Yuen* is inapplicable because it did not address an equal protection claim similar to our opinions resolving appeals based on the Federal First Offender Act (FFOA). However, *Yuen* specifically addressed Aguilera-Montero's argument that his state pardon eliminated the legal consequences of his conviction. Aguilera-Montero's equal protection claim is also premised on the contention that all pardons eliminate such legal consequences. Thus, *Yuen* is persuasive.

to 8 U.S.C. § 1227(a)(2)(A)(v). The Eleventh Circuit rejected this argument, observing that:

> Balogun is not a deportable alien. He is an inadmissible alien under section 1182(a)(2)(A)(i)(I), a wholly different provision authorizing his removal. This separate classification of inadmissibility applies to those aliens who, for one reason or another, are ineligible to enter or re-enter the United States in the first place. . . .
>
> Section 1182 does not have a pardon provision like section 1227 does, and we believe that if Congress had intended to extend the pardon waiver to inadmissible aliens, it would have done so . . .

*Id.* at 1362-63 (citations, alteration, and internal quotation marks omitted).

**[4]** We agree with the Eleventh Circuit that the basic tenets of statutory construction preclude us from inferring a waiver under the provisions of 8 U.S.C. § 1182(a). *See Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir.), *cert. denied* 129 S.Ct. 254 (2008) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citations omitted). We are persuaded by the reasoning of the Eleventh Circuit and, therefore, hold that the state pardon did not remove the immigration consequences of Aguilera-Montero's conviction.

## B.   Aguilera-Montero's Equal Protection Argument

**[5]** Aguilera-Montero raises an equal protection challenge to the absence of a waiver provision in 8 U.S.C. § 1182(a)(2)(A)(i)(II) for a state pardon, although a waiver is available in similar circumstances to deportable aliens, pursu-

ant to 8 U.S.C. § 1227(a)(2)(A)(vi). We conclude that Aguilera-Montero's equal protection challenge is unavailing. "Distinctions between different classes of aliens in the immigration context are subject to rational basis review and must be upheld if they are rationally related to a legitimate government purpose." *Avila-Sanchez*, 509 F.3d at 1041 (citation omitted). "A legislative classification must be wholly irrational to violate equal protection." *de Martinez v. Ashcroft*, 374 F.3d 759, 764 (9th Cir. 2004), *as amended* (citation and internal quotation marks omitted). "Challengers have the burden to negate every conceivable basis which might support a legislative classification whether or not the basis has a foundation in the record." *Id.* (citation, alterations, and internal quotation marks omitted).[4]

**[6]** "A fundamental distinction runs throughout immigration law: the distinction between an alien who has effected an entry into the United States and one who has never entered." *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004) (citations, alteration, and internal quotation marks omitted). "This distinction is significant. Aliens standing on the threshold of entry are not entitled to the constitutional protections provided to those within the territorial jurisdiction of the United States." *Id.* (citations and internal quotation marks omitted). "For this reason, immigration laws can constitutionally treat aliens who are already on our soil (and who are therefore deportable) more favorably than aliens who are merely seeking admittance (and who are therefore excludable)." *Id.* (citation, alteration, and internal quotation marks omitted). "The entry fiction explains the apparent paradox:

---

[4]The government contends that Aguilera-Montero, as an inadmissible alien, cannot invoke the Fifth Amendment's due process protections. However, "[i]t is well established that all individuals in the United States—citizens and aliens alike—are protected by the Due Process Clause of the Constitution. It is equally well established that the Due Process Clause incorporates the guarantees of equal protection." *United States v. Calderon-Segura*, 512 F.3d 1104, 1107 (9th Cir. 2008) (citation omitted).

the doctrine provides that although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Id.* (citations and internal quotation marks omitted).

Aguilera-Montero posits that his equal protection rights were violated because deportable aliens convicted of aggravated felonies are eligible for a waiver, while inadmissible aliens convicted of less serious crimes, such as simple possession, are not similarly entitled to a waiver. However, Aguilera-Montero's argument ignores the language of 8 U.S.C. § 1227(a)(2)(B)(i). In evaluating an equal protection claim, we evaluate the applicable statutory language that is "substantially identical" for inadmissible and deportable aliens. *See Cabasug v. I.N.S.*, 847 F.2d 1321, 1325 (9th Cir. 1988), *as amended*. Aguilera-Montero was charged as removable pursuant to the controlled substance provision contained in 8 U.S.C. § 1182. As a result, the analytical focus is 8 U.S.C. § 1227(a)(2)(B)(i), the statutory analogue for deportable aliens with controlled substance convictions, not the aggravated felony statute referenced by Aguilera-Montero. *See Cabasug*, 847 F.2d at 1324 ("Certain narcotics and marijuana offenses are grounds both for exclusion and deportation. These drug subsections are among the most nearly identical sections of the exclusion and deportation statutes.") (citations omitted).

8 U.S.C. § 1227(a)(2)(B)(i)(2006) provides that:

> [a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving pos-

session for one's own use of 30 grams or less of marijuana, is deportable.

[7] Title 8 U.S.C. § 1227(a)(2)(B)(i), which applies to controlled substance convictions, does not contain a waiver similar to the one contained in 8 U.S.C. § 1227(a)(2)(A)(vi). Consequently, a deportable alien with a controlled substance conviction would be barred from relief in the same manner as Aguilera-Montero is barred as an inadmissible alien. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II).[5] Aguilera-Montero's equal protection claim fails because deportable aliens and inadmissible aliens with controlled substance convictions are similarly ineligible for a pardon-based waiver. *Compare* 8 U.S.C. § 1227(a)(2)(B)(i)(no waiver provision) and 8 U.S.C. § 1182(a)(2)(A)(i)(II)(no waiver provision) *with* 8 U.S.C. § 1227(a)(2)(A)(vi) (waiver for crimes other than ones relating to controlled substances); *see also Dillingham v. I.N.S.*, 267 F.3d 996, 1007 n.13 (9th Cir. 2001) ("[N]o pardons of drug offenses are recognized under the INA, whether foreign or domestic.") (citations omitted).

In any event, we have rejected equal protection claims premised on the statutory differences based on the alleged "seriousness" of the crimes. In *Carr v. I.N.S.*, 86 F.3d 949, 952 (9th Cir. 1996), we rejected the petitioner's contention that "it is irrational to allow expungement for crimes of moral turpitude, but not for weapons offenses, where many crimes of moral turpitude would seem greatly more egregious than firearms offenses." *See also Cabasug*, 847 F.2d at 1327 ("We also do not agree with the implicit proposition that the Constitution requires Congress to lay out crimes on a spectrum, and grant at least as much discretion for the less serious as for any more serious crimes.").

_____

[5]Titles 8 U.S.C. § 1227(a)(2)(B)(i) and 8 U.S.C. § 1182(a)(2)(A)(i)(II) differ in that 8 U.S.C. § 1227(a)(2)(B)(i) provides an additional exception for marijuana possession, which would not impact Aguilera-Montero, as he was convicted of cocaine possession.

If we created an implied waiver under 8 U.S.C. § 1182, inadmissible aliens with controlled substance convictions would enjoy a more generous waiver provision than that expressly provided to deportable aliens under 8 U.S.C. § 1227. In particular, 8 U.S.C. § 1227 limits the granted waiver to the enumerated crimes. *See* 8 U.S.C. § 1227(a)(2)(A)(vi) (providing for a waiver of deportation only for deportable aliens convicted of crimes of moral turpitude, an aggravated felony or high speed flight from an immigration checkpoint). Under Aguilera-Montero's requested interpretation of 8 U.S.C. § 1182, inadmissible aliens with controlled substance convictions would benefit from the waiver provision in 8 U.S.C. § 1227(a)(2)(A)(v), while deportable aliens charged with controlled substance offenses would not be similarly eligible. To imply such a waiver "would vastly overstep our limited scope of judicial inquiry into immigration legislation, and would interfere with the broad enforcement powers Congress has delegated to the Attorney General." *Komarenko v. I.N.S.*, 35 F.3d 432, 435 (9th Cir. 1994) (citations and internal quotation marks omitted).

Aguilera-Montero also asserts that *Garberding v. I.N.S.*, 30 F.3d 1187 (9th Cir. 1994), and related Federal First Offender Act (FFOA) cases support his equal protection challenge.[6] However, *Garberding's* equal protection analysis is inapplicable to Aguilera-Montero's equal protection argument. As we stated in *Carr*:

> [Petitioner] asserts that *Garberding* somehow requires us to hold that the Service's distinction

---

[6]"As a general rule, the BIA does not recognize expungements of controlled substance offenses for federal immigration purposes." *Dillingham*, 267 F.3d at 1005 (citation omitted). "However, in 1970, Congress carved out a narrow exception for simple possession offenses when it enacted the [FFOA]. . . . Under the FFOA, no legal consequences may be imposed following expungement as a result of the defendant's former conviction." *Id.* (citation omitted). Aguilera-Montero does not contend that he is eligible for the FFOA exception.

between firearms on the one hand, and moral turpitude and drug crimes on the other, is irrational and violative of due process. *Garberding*, however, ruled only on the constitutionality of treating aliens differently on the basis of which state laws they violated. It concluded only that treating aliens differently on the basis of their state expungement statute is irrational; it did not speak to the issue of treating aliens differently on the basis of the crimes they had committed. Because the holding of *Garberding* is so limited, it cannot serve [petitioner's] purpose of showing that the Service's distinctions based on the crimes aliens commit violate due process.

86 F.3d at 952.[7]

Aguilera-Montero fails to provide any legal support for his proposition that "a person pardoned through a pardon by a state governor should not be subject to deportation as long as he *could* have received the benefit of a Presidential pardon if he had been prosecuted under federal law." (emphasis in the original).[8] Indeed, the underlying premise of Aguilera-

---

[7]Aguilera-Montero also relies on *Cordes v. Gonzales*, 421 F.3d 889 (9th Cir. 2005). However, that opinion was vacated for lack of jurisdiction. *See Cordes v. Mukasey*, 517 F.3d 1094, 1095 (9th Cir. 2008) (order).

[8]Any alien could potentially receive the benefit of a Presidential pardon, as the Presidential power to pardon "extends to every offence known to the law, and may be exercised at any time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment. This power of the President is not subject to legislative control." *Ex parte Garland*, 71 U.S. at 380. The description of the expansive Presidential power to pardon is in stark contrast to the more limited analysis conducted in FFOA cases, where there is a specific standard that must be satisfied. *See, e.g., Aguiluz-Arellano v. Gonzales*, 446 F.3d 980, 983 (9th Cir. 2006) ("Because the conviction for being under the influence was Aguiluz-Arellano's second conviction for a drug offense, the FFOA could not have applied if he had been prosecuted in federal court.") (citation omitted).

Montero's argument is flawed, as it is based on *Ex parte Garland* and related cases, which we have rejected in the immigration context. *See Yuen*, 406 F.2d at 501-02.[9]

[8] Aguilera-Montero, therefore, fails to demonstrate that the absence of a waiver for inadmissible aliens with a state pardon is "wholly irrational [so as] to violate equal protection." *de Martinez*, 374 F.3d at 764 (citations and internal quotation marks omitted).[10]

## IV. CONCLUSION

Because Aguilero-Montero is an inadmissible alien and no statutory basis exists to waive his inadmissibility, he cannot adjust his status to that of a lawful permanent resident. Neither his state pardon nor his equal protection claim changes the fact that Congress has expressly declined to provide a waiver for an inadmissible alien convicted of a crime relating to a controlled substance.

---

[9]Aguilera-Montero relies on a memorandum from the Office of Legal Counsel (OLC) as additional support for his argument. The OLC disagreed with *Yuen's* conclusion that deportation does not constitute punishment. 19 U.S. Op. O.L.C. 160 (O.L.C. June 19, 1995) (OLC Memo). The OLC's disagreement concerned the effect of a Presidential pardon, with the OLC concluding that "congressional legislation cannot define or limit the effect of a presidential pardon." *Id.* However, Aguilera-Montero's case involves a state pardon. In any event, the OLC's opinion addressed 8 U.S.C. § 1251, the statutory predecessor to 8 U.S.C. § 1227. *See id.* The OLC's analysis necessarily failed to encompass the interplay between 8 U.S.C. § 1227 and 8 U.S.C. § 1182. *See* OLC Memo ("[T]he question raised . . . is not a matter of statutory interpretation, but instead entails consideration of the scope of the President's pardon authority under the Constitution.").

[10]Aguilera-Montero also asserts that the IJ erred in not permitting him to apply for adjustment of status and a waiver pursuant to 8 C.F.R. § 212.2(e). However, as an inadmissible alien, Aguilera-Montero is not entitled to adjustment of status. *See Blanco v. Mukasey*, 518 F.3d 714, 720 (9th Cir. 2008) ("In removal proceedings, the alien has the burden of establishing that he is clearly and beyond doubt entitled to be admitted and is not inadmissible.") (citation and internal quotation marks omitted).

**PETITION FOR REVIEW DENIED.**