**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRICIA HERRERA; and JUGENDSTIL, INC.,
             *Plaintiffs-Appellants,*

             v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and ROBERT WIEMANN, Director, Administrative Appeals Office, U.S. Citizenship and Immigration Services,
             *Defendants-Appellees.*

No. 08-55493

D.C. No.
CV-00871-SGL-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
May 4, 2009—Pasadena, California

Filed July 6, 2009

Before: John T. Noonan, Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

8209

## COUNSEL

John B. Bartos and Charles M. Miller, The Miller Law Offices, Studio City, California, for the plaintiffs-appellants.

Sherease Pratt, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the defendants-appellees.

---

## OPINION

GRABER, Circuit Judge:

The United States Citizenship and Immigration Services ("agency") may revoke its previous approval of a visa petition "at any time" for "good and sufficient cause." 8 U.S.C. § 1155. We must determine whether the enactment of 8 U.S.C. § 1154(j) altered the agency's revocation authority. We hold that it did not. Because the agency's decision is otherwise free of legal error and supported by substantial evidence, we affirm the district court's grant of summary judgment to Defendants.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff Tricia Herrera is a citizen of the Philippines. In March 1994, she began working in the Philippines as the Vice President of Marketing for a Philippine company, Plaintiff Jugendstil, Inc. At the time, Jugendstil manufactured furniture and provided interior design services to clients in various countries, including the United States. Jugendstil sought to transfer Herrera to its United States branch office and filed an I-129 Petition for Nonimmigrant Work in L-1A classification ("L-1A petition") on her behalf. An approved L-1A petition allows an alien who has worked for an international company abroad to work temporarily in the United States for that same company (or a legally related entity) "in a capacity that is managerial [or] executive." 8 U.S.C. § 1101(a)(15)(L); *see also Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1066 (9th Cir. 2008) (discussing different types of L petitions); *see generally* 8 U.S.C. § 1184 (statutory provisions

governing the admission of nonimmigrants); 8 C.F.R. § 214.2(*l*) (regulations governing L petitions). In March 1997, the agency[1] approved Jugendstil's L-1A petition on behalf of Herrera, for a period of one year. Herrera moved to the United States and began working at Jugendstil's United States branch office. The agency later approved two extensions of the L-1A petition: a one-year extension valid through March 10, 1999, and a two-year extension valid through March 1, 2001. *See* 8 C.F.R. § 214.2(*l*)(15) (regulation governing extensions of L petitions).

In 1999, Jugendstil filed an I-140 Immigrant Petition for Alien Worker ("I-140 petition") on Herrera's behalf, under 8 U.S.C. §§ 1154(a)(1)(F) and 1153(b)(1)(C). Those statutory provisions allow an employer to file an I-140 petition on behalf of an alien who, among other things, seeks to work for the company "in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C); *see also* 8 U.S.C. § 1101(a)(44)(A)-(B) (defining the terms "managerial capacity" and "executive capacity"). The agency approved the I-140 petition in November 1999.

In February 2000, Herrera filed an I-485 Application to Adjust Status to Legal Permanent Resident ("I-485 application") under 8 U.S.C. § 1255(a). On April 18, 2001, an officer at the San Francisco District Office interviewed Herrera regarding her I-485 application. The interviewing officer took handwritten notes, which were not provided to Herrera at the time but eventually were added to the administrative record. In the interview, Herrera explained that, beginning at some point in 2000, her employer primarily provided interior design services and either did not manufacture furniture at all or did very little furniture manufacturing.[2] The interviewer requested

---

[1] At the time, the agency was named the Immigration and Naturalization Service. *See Brazil Quality Stones*, 531 F.3d at 1066 & n.2. For ease of reference, we use "agency" to refer to the present and predecessor entities.

[2] Plaintiffs dispute, to some extent, the content of Herrera's statements at that interview. But they do not dispute that, at some point in 2000, Jugendstil shifted its focus to interior design.

certain documentation from Herrera, which she provided two months later.

On March 13, 2002, the interviewing officer sent an internal referral memorandum to the California Service Center ("CSC"). The memorandum concluded that Herrera's role in the company was neither managerial nor executive and recommended that the CSC revoke its prior approval of the I-140 petition. Because it was an internal memorandum, the agency did not send Plaintiffs a copy.

On April 1, 2002, Herrera sent a notice to the CSC that she had left her employer and accepted a new position as marketing manager with Bay Area Bumpers, an affiliate of Jugendstil. Her notice stated that she wished to take advantage of the recently enacted job-portability provision codified at 8 U.S.C. § 1154(j) ("Portability Provision").

On July 25, 2002, the CSC issued a notice of intent to revoke its previous approval of Herrera's I-140 petition, pursuant to 8 U.S.C. § 1155 and 8 C.F.R. § 205.2. The statutory provision states that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." 8 U.S.C. § 1155. The notice of intent to revoke explained that Herrera did not meet the approval requirements for an I-140 petition because, as revealed by her statements in the 2001 interview, her job duties were not executive or managerial as required by statute. In particular, the notice mentioned the small size of Jugendstil (only seven employees) and the nature of Herrera's job duties (which included visits to client sites). The notice afforded Herrera 30 days to offer evidence and argument in rebuttal.

Herrera responded with a five-page letter from Jugendstil and copies of Jugendstil's quarterly wage reports. The CSC was unpersuaded and, on November 12, 2002, it revoked its previous approval of the I-140 petition. The revocation notice

rested on the same reasons stated in the notice of intent to revoke: the small number of employees and Herrera's self-description of her job duties in 2001. The revocation notice concluded that the evidence "clearly demonstrate[s] that [Herrera's] duties were not and are not managerial or supervisory."

The next day, the CSC denied Herrera's I-485 application. Because Herrera was no longer the beneficiary of an approved I-140 petition, she did not meet the requirements for approval of her I-485 application. *See* 8 C.F.R. § 245.2(a)(2)(i) (listing the requirements for approval of an I-485 application). Plaintiffs do not challenge that downstream decision here; they challenge only the agency's revocation of its previous approval of the I-140 petition.[3]

Plaintiffs appealed the revocation to the Administrative Appeals Office ("AAO"). The AAO denied the appeal in a nine-page, single-spaced, written decision. The AAO concluded that the evidence submitted at the time of the original petition was insufficient to establish eligibility because of the small number of employees and because of the AAO's determination that Herrera's primary function was not supervision of other employees. Additionally, the AAO concluded that the evidence of her role at the time of the 2001 interview was also insufficient to establish eligibility for approval of the I-140 petition.

Plaintiffs filed this action in federal district court in 2006, seeking review of the agency's action under 5 U.S.C. § 706. The district court granted summary judgment to Defendants, and Plaintiffs timely appeal.

---

[3]In December 2002, Bay Area Bumpers filed an I-140 petition on behalf of Herrera, and Herrera filed a concurrent I-485 application. The agency denied both, and Plaintiffs do not challenge those denials.

## STANDARDS OF REVIEW

We review de novo the district court's grant of summary judgment. *Love Korean Church v. Chertoff*, 549 F.3d 749, 753-54 (9th Cir. 2008).

We have jurisdiction to review a visa revocation decision under 8 U.S.C. § 1155, notwithstanding the jurisdiction-stripping provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *ANA Int'l Inc. v. Way*, 393 F.3d 886, 888-89 (9th Cir. 2004); *but see id.* at 895 (Tall-man, J., dissenting) (stating that the majority's holding is contrary to congressional intent and creates an intra- and inter-circuit conflict); *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 694-95 (9th Cir. 2003) (Beezer, J., dissenting) (stating that he would hold that this court lacks jurisdiction over the agency's discretionary decision to grant or deny a visa petition). Because the AAO's decision was the agency's final decision, we review the AAO's decision. *See* 5 U.S.C. § 704 (granting judicial review over "*final* agency action" (emphasis added)); *cf. Aguilera-Montero v. Mukasey*, 548 F.3d 1248, 1250 (9th Cir. 2008) ("When the [Board of Immigration Appeals ('BIA')] conducts a de novo review and issues its own decision, we review the BIA's decision rather than the [immigration judge's]." (alteration and internal quotation marks omitted)).

Under 5 U.S.C. § 706(2)(A), we may set aside the agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Family Inc. v. US Citizen & Immigration Servs.*, 469 F.3d 1313, 1315-16 (9th Cir. 2006) (applying this standard to the agency's determination that the plaintiff would not be acting in a managerial capacity); *Spencer Enters.*, 345 F.3d at 693 (applying this standard to the agency's denial of a visa petition). "The agency's factual findings are reviewed for substantial evidence. We will not disturb the agency's findings under this deferential standard unless the evidence presented

would *compel* a reasonable finder of fact to reach a contrary result."[4] *Family Inc.*, 469 F.3d at 1315 (citation and internal quotation marks omitted).

## DISCUSSION

Plaintiffs argue that the agency lacked the authority to revoke its previous approval of the I-140 petition because Herrera met the requirements of the Portability Provision and that, in any event, the agency's revocation was legally erroneous and not supported by substantial evidence. We review the arguments in turn.

### A.   *The Agency's Revocation Authority*

**[1]** Before the 2000 enactment of the Portability Provision, the agency's revocation authority was clear. "The Secretary of Homeland Security may, *at any time*, *for* what he deems to be *good and sufficient cause*, revoke the approval of any petition approved by him under section 1154 of this title [which includes an I-140 petition]." 8 U.S.C. § 1155 (emphases added); *see also* 8 C.F.R. § 205.2 (implementing regulations). The statute permits revocation "at any time," so there plainly was no time constraint on when the agency could revoke the approval. The statute also permits revocation only "for what [the agency] deems to be good and sufficient cause." We have held that "[t]he [BIA] has reasonably interpreted this statutory requirement to be satisfied if 'the evidence of record at the time the decision was issued . . . warranted . . . [a] denial' of the petition." *Love Korean Church*, 549 F.3d at 754 n.3 (ellipses and last alteration in original) (quoting *In re Estime*, 19 I. & N. Dec. 450, 452 (B.I.A. 1987)); *see also In re Ho*, 19 I. & N. Dec. 582 (B.I.A. 1988) (applying the *In re Estime* standard). That is precisely the agency's reason here.

---

[4]Plaintiffs argue that the district court did not apply the correct standard of review in this regard. Plaintiffs' arguments are not relevant, because we review the district court's decision de novo.

**[2]** Plaintiffs argue that the Portability Provision changes that analysis. In 2000, Congress recognized that long delays by the agency in processing I-485 applications were causing practical difficulties for some applicants. *See, e.g.*, 146 Cong. Rec. 8437 (2000), *also reported at* 146 Cong. Rec. S4191-01, *S4191 (daily ed. May 18, 2000) ("All of us have heard the horror stories of the long delays in processing naturalization and immigration applications. What was once a 6-month process has now become a 3- to 4-year ordeal." (statement of Sen. Feinstein)). One practical problem concerned aliens, like Herrera, who were working pursuant to an approved I-140 petition. An I-140 petition is filed by the employer, not by the employee. Before Congress enacted the Portability Provision, a beneficiary employee of an I-140 petition could not change jobs and still receive the benefit of the I-140 petition. As the title of the Portability Provision states, Congress granted a certain amount of "[j]ob flexibility for long delayed applicants":

> Job flexibility for long delayed applicants for adjustment of status to permanent residence
>
> A petition under subsection (a)(1)(D)[5] of this section [i.e., an I-140 petition] for an individual whose application for adjustment of status pursuant to section 1255 of this title [i.e., an I-485 applica-

---

[5]The correct reference here is to subsection (a)(1)(F), not subsection (a)(1)(D). The error appears to have been caused by an intervening (and incomplete) renumbering of some subsections. *See Perez-Vargas v. Gonzales*, 478 F.3d 191, 192 n.2 (4th Cir. 2007) (explaining the source of the error); *see also Sung v. Keisler*, 505 F.3d 372, 374 (5th Cir. 2007) (quoting the statute beginning after the typographical error); *Matovski v. Gonzales*, 492 F.3d 722, 730 (6th Cir. 2007) (quoting the full statutory text, and proceeding as if there were no typographical error; that is, that the statute referred to subsection (a)(1)(F)). The agency does not argue that the Portability Provision is inapplicable for this reason. Like the Fourth, Fifth, and Sixth Circuits, we proceed on the basis that the statute refers to subsection (a)(1)(F).

tion] has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.

8 U.S.C. § 1154(j).

**[3]** The effect of the Portability Provision is clear. Whereas an alien working under an I-140 petition previously could not change jobs without seeking a new I-140 petition via his or her new employer, an alien now may change jobs and the *original* I-140 petition "shall remain valid with respect to [the] new job," subject to certain requirements. Nothing suggests that the Portability Provision altered the agency's revocation authority.

Plaintiffs disagree. They point out that the agency does not dispute that Herrera met all the requirements of the Portability Provision: When she changed jobs (presumably to a qualifying position), her I-485 application had been pending for 180 days.[6] Plaintiffs argue that, because the Portability Provision states that the petition "shall remain valid," the agency cannot revoke its previous approval of that petition.

As an initial matter, Plaintiffs' argument ignores the larger context of the provision. The Portability Provision states that

---

[6]Three important events occurred in the following order: (1) Herrera filed her I-485 application; (2) more than 180 days later, she changed jobs and submitted a letter stating that she believed that she had met the requirements of the Portability Provision; and (3) the agency issued the notice of intent to revoke its previous approval of the I-140 petition. (Internally, the agency began to question its previous approval of the petition well before Herrera changed jobs, but there is no indication in the record that Herrera was aware of that fact and, in any event, the agency did not act formally to revoke its approval of the petition until after Herrera changed jobs.)

the petition "shall remain valid *with respect to [the] new job*" (emphasis added), not that the petition shall forevermore remain valid. More to the point, in order for a petition to "remain" valid, it must have been valid from the start. The agency here held that the petition should not have been approved; in other words, the petition was not, and had never been, valid. Plaintiffs assert that, to the contrary, a petition is "valid" for purposes of the Portability Provision as soon as the agency approves the petition. We are unpersuaded.

**[4]** We agree with the division of the AAO that addressed this issue in *In re Applicant [Name Redacted by the AAO]*, No. WAC 02 282 54013, 2005 WL 1950775 (A.A.O. Jan. 10, 2005). There, the AAO noted that "[t]he term 'valid' is not defined by the statute, nor does the congressional record provide any guidance as to its meaning." *Id.* The AAO reviewed various dictionary definitions and "the overall design of the nation's immigration laws." *Id.* In particular, it noted that " '[a]ny employer desiring and intending to employ within the United States an alien *entitled* to classification under [8 U.S.C. § ] . . . 1153(b)(1)(C) . . . may file a petition with the Attorney General [now Secretary of Homeland Security] for such classification.' " *Id.* (second bracketed entry added) (quoting 8 U.S.C. § 1154(a)(1)(F)). The AAO concluded that, "to be considered 'valid' in harmony with the thrust of the related provisions and with the statute as a whole, the petition must have been filed for an alien that is 'entitled' to the requested classification." *Id.* The AAO reasoned that, "[c]onsidering the statute as a whole, it would severely undermine the immigration laws of the United States to find that a petition is 'valid' when that petition . . . was *approved, if it was filed on behalf of an alien that was never 'entitled' to the requested visa classification*." *Id.* (emphasis added). We agree with the AAO's cogent analysis.[7]

---

[7]The agency does not argue that we should give *Skidmore* deference to the AAO's branch office decision, so we accord it no special deference.

We add that we take Congress' enactment at face value: It intended to grant "*[j]ob flexibility* for long delayed applicants," 8 U.S.C. § 1154(j) (emphasis added), not to constrain the agency's revocation authority. Had Congress intended to constrain the agency's revocation authority, it easily could have expressed that intent clearly. For example, it could have stated so explicitly in the Portability Provision, or it could have amended 8 U.S.C. § 1155, which provides that the agency may revoke its previous approval of a petition "at any time" for "good and sufficient cause."

Finally, we add that Plaintiffs' reading of the Portability Provision leads to plainly unintended practical consequences. Congress clearly recognized that long delays were causing difficulties for certain applicants, and the Portability Provision afforded job flexibility for those whose I-485 applications had been pending for 180 days or more. But it is just as clear that Congress did not intend to grant *extra* benefits to those who changed jobs. Under Plaintiffs' reading, however, just such a result would occur, for the following reasons.

[5] Consider a person in the same situation as Herrera's, except that she did *not* change jobs while her I-485 application was pending. The Portability Provision does not apply, because she did not change jobs. As discussed above, the agency can revoke the hypothetical person's I-140 petition "at any time." Under Plaintiffs' interpretation, however, the agency *could revoke* the hypothetical person's I-140 petition, but it *could not revoke* Herrera's. Nothing in the legislative history, the statutory text, or common sense suggests that

*But see United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (giving *Skidmore* deference to interpretations contained in agency manuals or enforcement guidelines); *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008) (giving *Skidmore* deference to a Program Statement by the Bureau of Prisons); *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1014 (9th Cir. 2006) (giving *Skidmore* deference to unpublished one-member decisions by the BIA). Nevertheless, we agree with the reasoning in *In re Applicant*.

Congress intended applicants to have the ability, simply by changing jobs, to shield from revocation the agency's erroneous previous approval of an I-140 petition. Yet Plaintiffs' reading would do just that. Furthermore, under Plaintiffs' interpretation, an applicant would have a very large incentive to change jobs, in order to guarantee that the agency's approval of an I-140 petition could not be revoked. Congress could not have intended those results.

Plaintiffs urge us to overlook those reasons in favor of their interpretation of a 2003 internal agency memorandum written by the Acting Associate Director for Operations, William R. Yates ("Yates Memorandum"). Plaintiffs direct us to the following passage:

> If approval of the Form I-140 is revoked or the Form I-140 is withdrawn before the alien's Form I-485 has been pending 180 days, the approved Form I-140 is no longer valid with respect to a new offer of employment and the Form I-485 may be denied. If at any time the [agency] revokes approval of the Form I-140 based on fraud, the alien will not be eligible for the job flexibility provisions of [the Portability Provision] and the adjudicating officer may, in his or her discretion, deny the attached Form I-485 immediately.

Plaintiffs argue that the foregoing passage requires that, when an I-485 application has been pending for 180 days, the agency may revoke its approval of the I-140 petition *only in the case of fraud*.

We do not read so much into the Yates Memorandum. The quoted passage touches on the revocation issue only indirectly and does not provide a clear directive to those processing revocations of I-140 petition approvals. Indeed, the memorandum concerns the processing of I-485 applications, not the conditions under which the agency may revoke its previous

approval of an I-140 petition. *See also* Yates Memorandum at 1 ("The purpose of this memorandum is to provide field offices with *guidance on processing Form I-485, Application to Register Permanent Residence or Adjust Status [i.e., an I-485 application].*" (emphasis added)). Furthermore, Plaintiffs' reading of the Yates Memorandum is inconsistent with the statutory text: Nowhere does the Portability Provision distinguish between fraud and other reasons for revocation.

**[6]** In conclusion, we hold that the Portability Provision does not affect the agency's revocation authority, which permits revocation "at any time" for "good and sufficient cause." 8 U.S.C. § 1155.

B.  *Challenges to the Notice of Intent to Revoke*

**[7]** The notice of intent to revoke was legally sufficient. It plainly advised Herrera that she was not, and had never been, "eligible for the classification sought." It therefore met the regulatory requirement that Herrera be given "notice" of the "ground" on which the agency sought revocation. 8 C.F.R. § 205.2(a).

**[8]** The notice of intent to revoke also met the procedural requirements described in *In re Estime*, 19 I. & N. Dec. at 451. A petitioner generally "must be permitted to inspect the record of proceedings, must be advised of derogatory evidence of which he is unaware, and must be offered an opportunity to rebut such evidence and to present evidence in his behalf." *Id.* Nothing in the record suggests that those requirements were not met. The handwritten notes taken by the CSC officer at Herrera's 2001 interview and the officer's internal memorandum were not the sort of "derogatory evidence" contemplated by *In re Estime*. In any event, Herrera was not "unaware" of the content of her 2001 interview because she gave

the interview. And it was the interview itself, not the internal summaries of it, that caused the agency to seek revocation.[8]

C.    *Challenges to the Revocation*

[9] The AAO's decision is supported by substantial evidence.[9] The AAO held that Herrera's job description did not qualify as acting in "managerial capacity" or "executive capacity," because "[t]he description of the beneficiary's duties, the organizational chart, and the position descriptions of two individuals subordinate to the beneficiary's position are not sufficient to establish eligibility for this visa classification." Plaintiffs dispute the relevance and weight of the factors considered by the AAO, but the factors are permissible considerations and the AAO's conclusions are supported by substantial evidence. *See, e.g.*, *Family Inc.*, 469 F.3d at 1316 ("[T]he [agency] may properly consider an organization's small size as one factor in assessing whether its operations are substantial enough to support a manager."); *id.* (holding that a company's organizational chart is also a valid factor for

---

[8]Plaintiffs also challenge the admissibility of the documents in federal court, even though they are in the certified administrative record. We reject Plaintiffs' argument. Our review of agency action is limited to the administrative record. *Cent. Elec. Coop., Inc. v. Bonneville Power Admin.*, 835 F.2d 199, 204 (9th Cir. 1987). Plaintiffs made a similar argument before the AAO, challenging the correctness of the information in the documents. The AAO responded that Plaintiffs had not submitted affidavits describing her job duties to contradict those described in the notice of intent to revoke and that they bear the burden of producing such evidence. We find no factual or legal error in the AAO's ruling.

[9]Plaintiffs occasionally couch this argument in terms that allege procedural violations. For instance, they argue that the AAO did not consider the record evidence and did not consider the rebuttal evidence that Jugendstil submitted. In its decision, the AAO plainly described the record evidence and the rebuttal evidence and stated its reasons for rejecting that evidence. There is no procedural violation. Plaintiffs essentially are arguing that the AAO could not possibly have reached its conclusion if it had fully considered the relevant evidence—a "substantial evidence" argument.

consideration). As in *Family Inc.*, "[w]e have considered the record evidence in this case, and it does not compel a contrary conclusion." *Id.*

**[10]** Finally, the AAO applied the proper legal standard. The surest way to determine the job duties of a particular position is to question the person employed in that position, which is what the agency did here.

AFFIRMED.