**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRAZIL QUALITY STONES, INC., a
California Corporation; EUGENIO
TAVARESDOS SANTOS,
            *Plaintiffs-Appellants,*

v.

MICHAEL CHERTOFF, Secretary,
United States Department of
Homeland Security;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICES; EDUARDO AGUIRRE, Jr.,
Director, United States Citizenship
and Immigration Services; DONALD
W. NEUFELD, Center Director,
California Service Center of the
United States Citizenship and
Immigration Service; CHRISTINE
POULOS, Acting Director,
California Service Center of the
United States Citizenship and
Immigration Services; MICHAEL B.
MUKASEY, Attorney General,
United States Department of
Justice; ROBERT P. WIEMANN,
Director, Administrative Appeals
Office; DEPARTMENT OF HOMELAND
SECURITY ADMINISTRATIVE APPEALS
OFFICE,
            *Defendants-Appellees.*

No. 06-55879

D.C. No.
CV-05-02533-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
February 7, 2008—Pasadena, California

Filed July 10, 2008

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain, and
William A. Fletcher, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Angelo A. Paparelli, Paparelli & Partners LLP, Irvine, California, argued the cause for the plaintiffs-appellants and filed briefs; Debi Gloria, Paparelli & Partners LLP, Irvine, California, was on the opening brief.

Thomas K. Buck, Assistant United States Attorney, Los Angeles, California, argued the cause for the defendants-appellees and filed a brief; Leon W. Weidman, Assistant United States Attorney, Chief, Civil Division, and George S. Cardona, Acting United States Attorney, Los Angeles, California, were on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether the United States Bureau of Citizenship and Immigration Services abused its discretion in denying a small corporation's petition to extend the visa of its Brazilian President and Chief Executive Officer.

I

Eugene Tavares dos Santos is a Brazilian citizen who has served as the President and Chief Executive Officer ("CEO")

of a Brazilian corporation known as Granite Ebenezer since the corporation's founding in 1998. Granite Ebenezer sells and exports Brazilian granite and other decorative stones for use in residential and commercial construction. Dos Santos owns 99% of the corporation's stock; his wife owns the remaining 1%.

In 2002, in an effort to improve its ability to import its wares into the United States, Granite Ebenezer established a U.S.-based affiliate, Brazil Quality Stones, Inc. ("BQS"), as a California corporation. Like Granite Ebenezer, dos Santos owns 99% of the corporation's stock, while his wife owns the remaining 1%.

Once established, BQS and dos Santos (collectively "Petitioners") sought to transfer dos Santos from Brazil to the United States so that he could operate BQS as its President and CEO. Thus, BQS filed a petition for an L-1A nonimmigrant visa on dos Santos's behalf. The L visa is designed to allow multinational firms to transfer employees from the firm's overseas operations to its operations in the United States. The Immigration and Nationality Act ("INA") requires an alien granted such a visa (referred to as an "intra-company transferee") to be employed by the entity sponsoring his or her petition for a continuous period of at least one year within the three years preceding the petition. 8 U.S.C. § 1101(a)(15)(L). In addition, the noncitizen must "seek[ ] to enter the United States temporarily in order to continue to render his services to the same employer . . . in a capacity that is managerial, executive, or involves specialized knowledge." *Id.* A noncitizen employed in a "managerial" or "executive capacity" is eligible for an L-1A classification, while a noncitizen employed in a position of "specialized knowledge" is eligible for L-1B status. 8 U.S.C. §§ 1101(a)(44)(A), (B); 8 C.F.R. § 214.2(*l*)(1)(i). The two classifications impose different limitations upon the noncitizen's stay. *See* 8 U.S.C. §§ 1184(c)(2)(D)(i), (ii).

On August 29, 2002, the Immigration and Naturalization Service ("INS") granted dos Santos the L1-A visa Petitioners had requested. Dos Santos arrived in the United States and began operating BQS the next month. Because the applicable regulations classified BQS as a "new office," however, dos Santos's L-1A classification was approved for only one year, subject to extension by a later application.[1] Thus, as the end of dos Santos's first year in the United States drew near, BQS filed a second petition seeking to extend his L-1A classification for an additional three years. To obtain such extension, the INA and applicable regulations required BQS to demonstrate that it was "doing business" in the United States for the year preceding dos Santos's petition, 8 C.F.R. §§ 214.2(*l*)(1)(ii)(H), 214.2(*l*)(14)(ii)(B), and that dos Santos was employed in a "managerial" or "executive capacity," 8 U.S.C. §§ 1101(a)(15)(L), 1101(a)(44).

The United States Bureau of Citizenship and Immigration Services ("USCIS"), as the successor to the INS,[2] received the petition and soon thereafter requested additional evidence from BQS, explaining that the petition failed to establish that dos Santos was employed in a managerial or executive capacity. BQS timely responded with additional documentation.

---

[1]A "new office" is "an organization which has been doing business in the United States through a parent, branch, affiliate, or subsidiary for less than one year." 8 C.F.R. § 214.2(*l*)(1)(ii)(F). A petition filed on behalf of a noncitizen seeking to open or to be employed in such office "may be approved for a period not to exceed one year," after which time the employer may petition to extend the visa if it can demonstrate that it is "doing business" in the United States. *Id.* § 214.2(*l*)(7)(i)(A)(3); *see id.* § 214.2(*l*)(14)(ii)(B). "Doing business means the regular, systematic, and continuous provision of goods and/or services by a qualifying organization and does not include the mere presence of an agent or office of the qualifying organization in the United States and abroad." *Id.* § 214.2(*l*)(1)(ii)(H).

[2]In 2003, services provided by the Bureau of Citizenship and Immigration Services at the INS were transitioned to the USCIS at the newly-created Department of Homeland Security ("DHS").

The evidence submitted by BQS included an organizational chart of the corporation listing dos Santos at the top, supervising five employees: an International Budget Analyst, an Accounting Clerk, and a three-person sales team. Yet payroll records indicated that BQS had paid only three employees other than dos Santos during the quarter preceding the petition.

BQS also set forth dos Santos's duties, explaining that he was responsible for (1) supervising and managing BQS's "office and business affairs"; (2) "overseeing capital investment opportunities"; (3) developing "plans to further channels of distribution"; (4) "hiring and firing all employees and supervising managers"; (5) overseeing "domestic and international sales"; and (6) managing "outsourced relationships" with BQS's accounting firm and warehouse.

To document dos Santos's performance of these tasks, BQS submitted, among other things, a letter dos Santos sent to the INS seeking an H-1B visa on behalf of the International Budget Analyst, letters from BQS's accounting and warehousing firms indicating that dos Santos managed BQS's relations with them, and a brochure for a $35,000 piece of granite-cutting equipment that dos Santos had proposed for purchase by BQS.

After reviewing this evidence, the Director of the USCIS California Civil Service Center denied the petition to extend dos Santos's L-1A classification, concluding that the record failed to establish that dos Santos was employed in a managerial or executive capacity and that the record did not prove that BQS was doing business in the United States.

BQS appealed the Director's decision to the DHS Administrative Appeals Office ("AAO").[3] BQS submitted additional

---

[3]Where appropriate, we refer to the Director and the AAO collectively as "the agency."

evidence at this time, including a report by Dr. James S. Gould, a professor at Pace University in New York, which set forth his opinion that dos Santos qualified as a managerial or executive employee. The AAO considered the new evidence but dismissed the appeal, affirming the Director's conclusion that the record failed to show that dos Santos was a qualifying employee or that BQS was a qualifying organization.[4]

Petitioners then filed a complaint in the district court pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, seeking a declaratory judgment that the agency's decision was arbitrary and capricious and further seeking an injunction ordering the agency to approve the petition. The district court conducted a bench trial and ruled in favor of the agency.

This appeal timely followed.[5]

## II

In examining a district court's decision after a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *See Poland v. Chertoff*, 494 F.3d 1174, 1179 (9th Cir. 2007). However, the underlying agency decision in this case may not be set aside unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Thus, to prevail on its contention that the agency abused its discretion in declining to extend dos Santos's L-1A classification, Petition-

---

[4]Although BQS only appealed the Director's conclusion that dos Santos was not a qualifying employee to the AAO, the AAO affirmed the Director's decision on both grounds the Director articulated. Because Petitioners challenged both aspects of the AAO's decision in the district court, we consider their claim that BQS was a qualifying organization preserved for purposes of this appeal.

[5]In a concurrently filed memorandum disposition, we address Petitioners' additional challenges to the district court's decision. *See Brazil Quality Stones, Inc. v. Chertoff*, No. 06-55879 (9th Cir. July 10, 2008).

ers must demonstrate that the record compels two conclusions: (1) that dos Santos was primarily employed in a managerial or executive capacity (2) that BQS was doing business in the United States for the year preceding BQS's petition. *See id.*; *Family, Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006) (explaining that this court "will not disturb the agency's findings under this deferential standard unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result" (internal quotation marks omitted)). If we determine that the record fails to compel either determination, the agency's decision must stand.

## A

### 1

In 1970, Congress created the L nonimmigrant visa for a multinational firm's intra-company transferees by providing for the temporary admission of such noncitizens if, among other things, the noncitizen sought to render services in the United States to the firm or its subsidiary or affiliate "in a capacity that is managerial, executive, or involves specialized knowledge." 8 U.S.C. § 1101(a)(15)(L). Years later, in 1987, the INS in a set of regulations defined the terms "managerial" and "executive capacity." *See* 8 C.F.R. § 214.2(*l*)(1)(ii)(B), (C) (1989). Although nothing in the express language of the INA limited the availability of L visas to employees of multinational firms of a certain size, the INS comments accompanying the final rule expressed concern that sole proprietors were taking improper advantage of this classification. As the INS explained,

> A self-employed person . . . will frequently attempt to qualify under the L category by setting up a corporation in the United States, giving himself an executive title (e.g., "president") and continuing his self-employment in the U.S., often with a minimal

"investment," with no foreign operations abroad and no intent to return abroad. . . . We do not believe that Congress intended the L classification to be used in this manner, and the regulations are intended to control this abuse.

Temporary Alien Workers Seeking Classification Under the Immigration and Nationality Act, 52 Fed. Reg. 5738, 5740 (Feb. 26, 1987).

Accordingly, the regulation required that any noncitizen seeking an L-1A visa demonstrate that he or she would supervise decision-making personnel in his or her new position. Specifically, the regulation defined "managerial capacity" as

an assignment within an organization in which the employee *primarily* directs the organization or a department or subdivision of the organization, *supervises and controls the work of other supervisory, professional, or managerial employees*, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), and exercises discretionary authority over day-to-day operations.

8 C.F.R. § 214.2(*l*)(1)(ii)(B) (1989) (emphasis added).[6]

This regulation was short-lived. In the Immigration Act of 1990, Congress availed the L-1A classification to a wider group of noncitizens by amending the INA to define the term "managerial capacity" more broadly than the preceding regu-

---

[6]The regulation went on to state that

[t]he term manager does not include a first-line supervisor, unless the employees supervised are professional, nor does it include an employee who primarily performs the tasks necessary to produce the product and/or to provide the service(s) of the organization.

8 C.F.R. § 214.2(*l*)(1)(ii)(B) (1989).

lation. Specifically, the Act provided that an intra-company transferee would qualify as an employee acting in a "managerial capacity" if he or she "primarily . . . supervises and controls the work of other supervisory, professional, or managerial employees, *or manages an essential function within the organization*, or a department or subdivision of the organization."[7] 8 U.S.C. § 1101(a)(44)(A)(ii) (emphasis added). Thus, Congress removed the requirement that an applicant supervise decision-making personnel as a prerequisite to obtaining an L-1A classification. Indeed, Congress unequivocally expressed such intent by adding an additional subsection to the INA stating that "[a]n individual shall not be considered to be acting in a managerial or executive capacity . . . merely on the basis of the number of employees that the individual supervises," and instructing the agency to "take into account the reasonable needs of the organization . . . in light of [its] overall purpose and stage of development" in

---

[7]In full, the Act defines the term "managerial capacity" as "an assignment within an organization in which the employee primarily—

(i)   manages the organization, or a department, subdivision, function, or component of the organization;

(ii)   supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(iii)   if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

(iv)   exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 U.S.C. § 1101(a)(44)(A).

cases where "staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity." *Id.* § 1101(a)(44)(C).

2

In the case before us, the agency concluded that dos Santos's supervision of BQS personnel did not place him in a managerial capacity because he supervised only one professional employee.[8] Petitioners do not challenge such conclusion here. Rather, they argue that the agency failed properly to consider whether dos Santos was managing an "essential function" of BQS's organization, and urges that he was.

**[1]** We agree with Petitioners that the INA, as amended, renders managers of an essential business function eligible for an L-1A classification even if they supervise no employees at all. *See id.* § 1101(a)(44)(A)(iii) (stating that "if no other employee is directly supervised," the intra-company transferee must "function[ ] at a senior level within the organizational hierarchy or with respect to the function managed"). We also acknowledge the agency's observation that dos Santos holds a leadership position at the very top of BQS's corporate structure. Yet regardless of an intra-company transferee's position in the organizational hierarchy of his employer, the INA imposes the burden on the transferee and his or her employer to demonstrate that the transferee's responsibilities are "primarily" managerial. *Id.* § 1101(a)(44)(A).

**[2]** The Director held, and the AAO affirmed, that BQS failed to satisfy this burden. First, while BQS suggested that

---

[8]As explained above, an employee acting in a "managerial capacity" must supervise other "supervisory, professional, or managerial employees." 8 U.S.C. § 1101(a)(44)(A). The organizational chart submitted by BQS indicated that three paid employees were under dos Santos's supervision, but only the International Business Analyst qualified as a "professional" under the regulations. *See* 8 C.F.R. §§ 204.5(k)(2), (3)(i).

dos Santos was responsible for overseeing capital investment opportunities at BQS, the AAO pointed out that the only evidence to support such assertion was the fact that dos Santos proposed the purchase of a single piece of granite-cutting equipment. The AAO reasoned that this purchase, even if consummated, indicated only that dos Santos had authority to invest in equipment on BQS's behalf, but did not indicate that such investments were made on a regular basis or that their oversight constituted a significant portion of dos Santos's responsibilities.

[3] Petitioners also maintain that dos Santos was responsible for overseeing BQS's domestic and international sales and its distribution chains. Yet the documents submitted to the agency do not describe with particularity what such duties entailed.[9] In summarizing the evidence, the AAO acknowledged dos Santos's leadership role at the top of BQS's hierarchy, but also concluded that dos Santos's direct involvement in the corporation's daily operations was necessary for its success and that such fact precluded dos Santos from qualifying as a managerial employee. In other words, the AAO determined that BQS has not yet reached the level of organizational sophistication in which dos Santos could devote his primary attention to managerial duties as opposed to operational ones, even though he held a position at the head of BQS's corporate structure.

[4] We cannot conclude that the record compels a contrary conclusion. BQS is a small business that paid only three

---

[9]In the proceedings before the AAO, BQS submitted Dr. Gould's report, which set forth his opinion that an individual acting as outlined in BQS's description of dos Santos's responsibilities would qualify as an executive or manager under the INA. The AAO declined to give this opinion evidentiary weight, however, because it was based on the generalized job description furnished by BQS, rather than any specific study of dos Santos's performance at BQS. Under these circumstances, we cannot conclude that the agency abused its discretion in failing to give Dr. Gould's opinion evidentiary weight.

employees other than dos Santos during the quarter preceding its petition to extend his visa. As we have held before, an organization's small size, standing alone, cannot support a finding that its employee is not acting in a managerial capacity, but size is nevertheless a relevant "factor in assessing whether [an organization's] operations are substantial enough to support a manager." *Family, Inc.*, 469 F.3d at 1316. Under the plain terms of the INA, dos Santos cannot qualify for an L-1A visa simply because he performs managerial tasks; such tasks must encompass his *primary* responsibilities. *See Republic of Transkei v. INS*, 923 F.2d 175, 177-78 (D.C. Cir. 1991) (holding that, under the pre-1990 version of the INA, a visa applicant who performs both operational and managerial tasks bears the burden of demonstrating what proportion of his responsibilities are consumed with the latter).[10]

[5] BQS bore the burden of demonstrating that dos Santos was primarily engaged in overseeing essential functions of BQS's business rather than performing them himself. While the record contains evidence that dos Santos performed managerial tasks, it does not compel the conclusion that such tasks comprised his primary responsibilities at BQS.

[6] Petitioners argue that requiring such a showing will impose an onerous burden on small businesses seeking to gain visas for their executive and managerial employees. Yet whatever policy Petitioners' argument might advance, we are bound by the plain terms of the INA and confined by the def-

---

[10]The AAO relied on the BIA's decision in *In re Church of Scientology*, 19 I. & N. Dec. 593, 604 (1988) for the proposition that an applicant bears the burden of demonstrating the proportion of his or her activities that are managerial. Even though *Scientology* was decided before the Immigration Act of 1990, we reject Petitioners' assertion that the AAO's reliance on such authority was inappropriate. While the Act expanded the definition of "managerial capacity" to include employees managing an essential function of a qualifying organization's business, the Act retained the preceding regulation's requirement that such employee's responsibilities must be "primarily" managerial. 8 U.S.C. § 1101(a)(44)(A).

erential standard with which we review agency decisions. *See* 5 U.S.C. § 706(2). Accordingly, based on the record before us, we conclude that the agency's determination that dos Santos was not acting in a managerial capacity at the time of BQS's petition to extend his visa was not an abuse of discretion.

### B

Because we conclude that the agency did not abuse its discretion in finding that dos Santos was not a qualifying employee, Petitioners cannot demonstrate that he is eligible for an L-1A classification. Accordingly, we express no view on the agency's alternative determination that BQS failed to establish that it was "doing business" in the United States for the year preceding its petition to extend dos Santos's visa as is required of a qualifying organization. *See* 8 C.F.R. §§ 214.2(*l*)(14)(ii)(B), 214.2(*l*)(1)(ii)(H).

### III

Based on the foregoing, the decision of the district court is

**AFFIRMED**.