**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GB INTERNATIONAL, INC.; et al., | No. 19-35866 |
| Plaintiffs-Appellants, | D.C. No. 2:18-cv-00227-RAJ |
| v. | |
| KRISTINE R. CRANDALL, Acting Director of Nebraska Service Center; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted March 2, 2021
Seattle, Washington

Before: RAWLINSON and BYBEE, Circuit Judges, and MOSKOWITZ,** District
Judge.

GB International, Inc. (GBI), Dong C. Park, Hyojin Kim, and Y-P- appeal the

district court's order denying Appellants' challenge under the Administrative Procedure

Act (APA) to the United States Citizenship and Immigration Services' (USCIS)

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Barry Ted Moskowitz, United States District Judge for the
Southern District of California, sitting by designation.

decision denying GBI's I-140 Petition for Alien Worker as a "multinational executive" and Park, Kim, and Y-P-s' derivative I-485 Adjustment of Status applications. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court.

We review de novo a district court's ruling on cross-motions for summary judgment. *Boardman v. Inslee*, 978 F.3d 1092, 1103 (9th Cir. 2020). "This court also reviews de novo the district court's evaluations of an agency's actions." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 991 (9th Cir. 2014). Under the APA, we must set aside agency action "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "An action is arbitrary and capricious if the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Innova Sols., Inc. v. Baran*, 983 F.3d 428, 431 (9th Cir. 2020) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)). "To survive a challenge, the agency must articulate 'a satisfactory explanation' for its action, 'including a rational connection between the facts found and the choice made.'" *Id.* (quoting *Dep't of Commerce v. New York*, --- U.S. ----, 139 S. Ct. 2551, 2569 (2019)).

USCIS's denial was not arbitrary and capricious for its purported failure to consider Junseo Pak's declaration. USCIS adequately addressed the relevant substance

of the Pak declaration. USCIS's reasons for rejecting Park's executive function claim, specifically its consideration of Dasom Kim's job duties, demonstrates that USCIS considered the Pak declaration.

USCIS's discounting of the expert opinion letters was supported by substantial evidence except for one reason asserted. We review the agency's factual findings for substantial evidence and will not disturb those findings "unless the evidence presented would compel a reasonable finder of fact to reach a contrary result." *Fam. Inc. v. USCIS*, 469 F.3d 1313, 1315 (9th Cir. 2006) (internal quotation marks and citation omitted). One of USCIS's reasons for discounting the expert letters—relying on the Occupational Outlook Handbook (OOH)—is not supported by substantial evidence as USCIS routinely relies on the OOH. *See Innova Sols.*, 983 F.3d at 430 ("USCIS relied on the [OOH] as an 'authoritative source' . . . ."). USCIS's other reasons for discounting the experts' letters—lack of expertise in visa classifications, failure to discuss the Immigration and Nationality Act (INA) or relevant regulations, and reliance solely on documents provided by GBI rather than their own observations—were supported by substantial evidence.

USCIS's discounting of Youngtaek Lim's declaration and GBI's sample invoices was supported by substantial evidence. USCIS provided sufficient reasoning to discount the Lim declaration due to its vague contents. USCIS could not conclude that Lim's assistance relieved Park of his non-qualifying duties and allowed him to focus on

3

executive functions. Similarly, USCIS's discounting of the sample invoices was supported by substantial evidence because the sales listed allow the inference that Park was engaging in day-to-day operations, rather than executive functions.

USCIS's finding that Park was not working primarily in an executive capacity between April 2013 and April 2014 was supported by substantial evidence. Nothing in Dasom Kim's job description indicated that she performed secretarial duties and Lim's declaration was too vague for USCIS to conclude that Karam employees actually relieved Park of any non-executive functions. USCIS also reviewed GBI's personnel and Park's job description. It found that Park's asserted duties were not credible due to the absence of managers and other team members. The lack of managers and team members made it unlikely that Park was not significantly involved in the operational tasks required to operate a business.

USCIS correctly interpreted and applied the term "executive capacity." The term "executive capacity" means:

> an assignment within an organization in which the employee primarily
>
> (i) directs the management of the organization or a major component or function of the organization;
> (ii) establishes the goals and policies of the organization, component, or function;
> (iii) exercises wide latitude in discretionary decision-making; and
> (iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B)(i)–(iv). Congress later revised the INA stating that "[a]n

4

individual shall not be considered to be acting in a managerial or executive capacity . . . merely on the basis of the number of employees that the individual supervises," and instructed USCIS to "take into account the reasonable needs of the organization . . . in light of [its] overall purpose and stage of development" in cases where "staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity." 8 U.S.C. § 1101(a)(44)(C).

USCIS's examination of GBI's organizational structure ties directly into the statutory definition of "executive capacity," namely whether Park had "the ability to 'direct the management' and 'establish the goals and policies' of that organization." Indeed, USCIS looked beyond Park's title to determine whether Park "primarily focus[ed] on the broad goals and policies of the organization rather than the day-to-day operations of the enterprise."

USCIS properly applied the INA. USCIS considered GBI's small size as one factor in assessing whether its operations are substantial enough to support an executive. After reviewing the evidence, USCIS found the lack of other employees serving as managers and team members likely meant that Park was not relieved from significant involvement in the operational tasks required to operate the business. *See*, *e.g.*, *Fam. Inc.*, 469 F.3d at 1316; *Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070 (9th Cir. 2008); *Herrera v. USCIS*, 571 F.3d 881, 890 (9th Cir. 2009).

**AFFIRMED.**